UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CAMPAIGN LEGAL CENTER, *et al.*,

Plaintiffs,

v.

FEDERAL ELECTION COMMISSION,

Defendant.

Civil Action No. 19-2336 (JEB)

## MEMORANDUM OPINION

Can a third party ever intervene to defend an election-related suit in which the government agency has defaulted? Plaintiffs Campaign Legal Center and one of its directors brought this case against the Federal Election Commission, challenging the FEC's dismissal of CLC's administrative complaint regarding Hillary Clinton's 2016 presidential campaign. The Commission, however, could not garner the four votes needed to defend its dismissal in this Court. And now the respondents to CLC's administrative complaint — Correct the Record, a political-action committee, and Hillary for America — have moved to intervene as defendants here. The result, then, is that Intervenors would effectively take the defaulting FEC's place in this suit. Although this is an unusual request, the Court will grant the Motion over CLC's objection.

I.     Background

The Federal Election Campaign Act, in addition to creating substantive campaign-finance law, sets out the scheme for its enforcement: "Any person who believes a violation of [FECA] . . . has occurred[] may file a complaint with the Commission." 52 U.S.C. § 30109(a)(1). The Federal Election Commission, made up of six politically diverse voting

1

members, id. § 30106(a)(1)–(2), must in turn notify the "person alleged in the complaint to have committed such a violation." Id. § 30109(a)(1).

After a period for that respondent to rebut the complaint, the Commission votes as to whether it "has reason to believe" that the respondent violated FECA. Id. § 30109(a)(2). It is aided in this determination by briefs submitted by its Office of General Counsel and the respondent stating their respective positions "on the legal and factual issues of the case." Id. § 30109(a)(3). Four Commissioners must vote in the affirmative for the case to move on to an investigation. Id. § 30109(a)(2). If the Commission does not so find and thus dismisses the administrative complaint, the complainant may then "file a petition with the United States District Court for the District of Columbia" within 60 days of the dismissal. Id. § 30109(a)(8)(A)–(B). The Commission must again have four affirmative votes to defend this civil action against the dismissal order. Id. §§ 30106(c), 30107(a)(6).

This Court's review of such a petition is limited: it "may declare that the dismissal of the complaint or the failure to act [was] contrary to law," id. § 30109(a)(8)(C) — that is, it "may not disturb a Commission decision to dismiss a complaint unless the dismissal was based on an 'impermissible interpretation of the Act . . . or was arbitrary or capricious, or an abuse of discretion." Common Cause v. FEC, 108 F.3d 413, 415 (D.C. Cir. 1997) (omission in original) (quoting Orloski v. FEC, 795 F.2d 156, 161 (D.C. Cir. 1986)). If the Court does find that the dismissal was contrary to law, "[it] may direct the Commission to conform with such declaration within 30 days." 52 U.S.C. § 30109(a)(8)(C).

The FEC had all six voting Commissioners for several years leading up to 2017. All Commissioners, Federal Election Commission, https://www.fec.gov/about/leadership-and-structure/commissioners/ (last visited Nov. 6, 2019). But as of June 2019, when it voted on the

2

complaint at issue in this case, it was two voting members short.  Id.  (Although not relevant here, the Court notes that in August 2019, a third Commissioner left, leaving three vacant spots that have yet to be filled.  Id.)

In October 2016, CLC filed an administrative complaint with the FEC, alleging that Hillary for America and Correct the Record had violated FECA's rules for "coordinated expenditures" between campaigns and political-action committees.  The FEC grouped this complaint with similar ones filed by other persons, and OGC recommended that the Commissioners find reason to believe HFA and CTR had violated FECA.  See ECF No. 10 (Motion to Intervene), Exh. 3 (Office of General Counsel Report) at 27.  The Commissioners split 2-2, however, and so did not have the four votes needed to proceed.  See ECF No. 10-5 (Proposed Motion to Dismiss), Exh. D (FEC Certification) at 1.  They consequently dismissed the administrative complaints.  Id. at 4.

In August of this year, CLC and one of its directors, Catherine Hinckley Kelley, filed suit in this Court challenging the FEC's dismissal order as "contrary to law" per 52 U.S.C. § 30109(a)(8).  See ECF No. 1 (Complaint) at 22–23.  Plaintiffs, whom the Court will jointly refer to as CLC, have since amended their Complaint.  See ECF No. 15.

The FEC, however, failed to garner the four affirmative votes required by 52 U.S.C. §§ 30106(c) and 30107(a)(6) for the agency to defend this civil suit.  See FEC Certification at 3.  The vote was 3-1, with Chair Weintraub dissenting.  Id.; see also Statement of Reasons of Chair Ellen L. Weintraub, Federal Election Commission (Sept. 20, 2019), https://eqs.fec.gov/ eqsdocsMUR/6940_2.pdf (hereinafter Weintraub SOR).  An entry of default against it will thus ultimately ensue.  See Fed. R. Civ. P. 55(a).

In October of this year, HFA and CTR moved to intervene as Defendants, arguing for intervention of right or, in the alternative, permissive intervention. CLC opposes the Motion.

**II.     Legal Standard**

Federal Rule of Civil Procedure 24(a) addresses intervention of right, and Rule 24(b) covers permissive intervention. The former <u>requires</u> the Court to allow intervention by anyone who "claims an interest relating to the . . . transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). In this Circuit, then, a movant must fulfill four requirements: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." <u>Deutsche Bank Nat'l Trust Co. v. FDIC</u>, 717 F.3d 189, 192 (D.C. Cir. 2013) (quoting <u>Karsner v. Lothian</u>, 532 F.3d 876, 885 (D.C. Cir. 2008)). In addition, movants for intervention in the D.C. Circuit are required "to demonstrate Article III standing." <u>Crossroads Grassroots Policy Strategies v. FEC</u>, 788 F.3d 312, 316 (D.C. Cir. 2015).

Rule 24(b), conversely, <u>allows</u> the Court to grant intervention where the intervenor makes a timely motion and "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). It also "must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

### III. Analysis

The Court begins its analysis with standing. It then addresses intervention — both as of right and by permission — and concludes by discussing the effect of the FEC's default.

#### A. Standing

The standing inquiry for an intervening defendant "is the same as for a plaintiff: the intervenor must show injury in fact, causation, and redressability." Crossroads, 788 F.3d at 316 (citing Deutsche Bank, 717 F.3d at 193). HFA and CTR must establish that they "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the [opposing party], and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1547 (2016). The "injury in fact" must be both "(a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 180 (2000). An injury is "particularized" when it "affect[s] the [party] in a personal and individual way," and it is "concrete" when it is "real, and not abstract," Spokeo, 136 S. Ct. at 1548 (internal quotation marks omitted), although "intangible injuries can nevertheless be concrete." Id. at 1549. CLC asserts that HFA and CTR have not established such an injury because an unfavorable ruling in this court would not require them "to do or refrain from doing anything," ECF No. 11 (Plaintiffs' Opposition) at 10 (quoting Hollingsworth v. Perry, 570 U.S. 693, 705 (2010)), and because any "future injuries [would] depend on the independent action of an absent third party." Id.

The Court agrees with Intervenors that the D.C. Circuit has already rejected both of CLC's arguments in a directly controlling case. In Crossroads, the intervenor-defendants were also respondents in a prior FEC action, yet the circuit court had no trouble identifying their injury in fact: "[T]he favorable FEC ruling provides [them] . . . with a significant benefit, similar

5

to a favorable civil judgment, and precludes exposure to civil liability. Were [they] to lose that beneficial ruling, [they] would return to the position of . . . respondent[s] subject to enforcement proceedings before a federal agency." 788 F.3d at 317. The court further stated that "even where the possibility of prevailing on the merits after remand is speculative, a party seeking to uphold a favorable ruling can still suffer a concrete injury in fact." Id. at 318. These holdings are directly responsive to CLC's arguments, for all the same things are true here. HFA and CTR benefit from the FEC's dismissal of the complaint against them, and loss of that dismissal order would subject them to the possibility of future liability. This is a sufficient injury in fact.

What is more, having shown this injury, Intervenors have established causation and redressability. In Crossroads, the court found that once the intervenor "[could] prove injury, then it [could] establish causation and redressability." Id. at 316. This is because, if their injury is the loss of a favorable FEC ruling, "then it rationally follows [that] the injury is directly traceable to [the plaintiff's] challenge to the FEC order; and [the respondent] can prevent the injury by defeating [the plaintiff's] challenge in the district court proceedings." Id. The same logic holds true here: CLC's challenge of the dismissal order, if successful, would be the direct cause of HFA and CTR's losing that order, and a successful defense of the order would redress that injury.

CLC further argues that, according to a different D.C. Circuit decision, HFA and CTR are "seeking to enforce the rights of third parties . . . , which the doctrine of prudential standing prohibits." Pl. Opp. at 9 (emphasis added) (quoting Deutsche Bank, 717 F.3d at 194). This argument appears to rely principally on the fact that, because of the FEC's default, HFA and CTR would be "litigat[ing] in the agency's stead." Id. The effect of default in this case will be

6

considered more fully below, see *infra* Section III.D, but the Court will address this third-party-standing issue here to the extent it affects prudential standing.

Once again, caselaw in this circuit appears to preclude CLC's position. Crossroads, which came after the Deutsche Bank case cited by Plaintiffs, stated: "Where an intervenor-defendant establishes Article III standing and meets the dictates of Federal Civil Rule 24, there is no need for another layer of judge-made prudential considerations to deny intervention." 788 F.3d at 320. Here — unlike in Deutsche Bank, see 717 F.3d at 194 — Intervenors have met the requirements of Article III. And as shown below, they also satisfy Rule 24. The Court thus need not impose "another layer of judge-made prudential considerations." Crossroads, 788 F.3d at 320.

B. Intervention of Right

The Opinion turns now to the four elements of intervention of right: "(1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair that interest; and (4) no party to the action can be an adequate representative of the applicant's interests." Deutsche Bank, 717 F.3d at 192 (quoting Karsner, 532 F.3d at 885). CLC appears not to challenge the first and fourth elements, see Pl. Opp. at 7, and in any case they are easily met here. The application is certainly timely, since Intervenors "moved to intervene less than two months after the plaintiffs filed their complaint and before the defendant[] filed an answer" or was required to do so. Fund for Animals, Inc. v. Norton, 322 F.3d 728, 735 (D.C. Cir. 2003). And there can be no question that a defaulting defendant will not adequately represent HFA's and CTR's interests.

The second and third elements have largely been proven in the standing discussion above. Because HFA and CTR "ha[ve] constitutional standing, [they] *a fortiori* ha[ve] 'an interest

7

relating to the property or transaction which is the subject of the action.'" Crossroads, 788 F.3d at 320 (quoting Fund for Animals, 322 F.3d at 728 (quoting Fed. R. Civ. P. 24(a)(2)). This interest, moreover, is threatened by the possibility of a "judicial pronouncement that the FEC's dismissal was contrary to law," which "would make the 'task of reestablishing the status quo . . . [more] difficult and burdensome'" and would have "persuasive weight with a new court" if CLC brings a civil-enforcement suit. Id. (omission and alteration in original) (quoting Fund for Animals, 322 F.3d at 735).

CLC's theory that the second element is not met relies again on the fact of the FEC's default. It claims that the Commission's "unprecedented" failure to garner the vote needed to defend this suit, see Pl. Opp. at 7, should "confound the rote application of Crossroads." Id. at 6. With the caveat that this will be discussed in more detail below, see *infra* Section III.D, it suffices for now to say that the procedural posture of this case is not sufficiently unusual so as to free this Court from its duty to follow clear circuit precedent.

### C. Permissive Intervention

Even if HFA and CTR did not meet the standard for intervention of right, this Court would grant them permissive intervention under Rule 24(b), which allows it to "permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). "In exercising its discretion" to permit intervention, "the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Id. R. 24(b)(3).

Clearly, Intervenors' defense here shares a common question of law with the main action: the legality of the FEC's dismissal order. While CLC states in a section heading that HFA and CLC are "not entitled to . . . permissive intervention," Pl. Opp. at 5, its brief makes no argument

8

to that effect, id. at 5–14, and the Court is hard pressed to create one. As to prejudice, it could be said that allowing intervention would prejudice CLC from the speedier resolution of this case by default, which also would apply a less searching standard of review. But the loss of default proceedings cannot be said to "unduly" prejudice CLC, which brought this suit anticipating that it would be defended, since the FEC's default is "unprecedented." Id. at 8.

### D. Effect of Default

The Court turns finally to the last — and, frankly, the most interesting — issue presented by the current Motion. Plaintiffs posit, and Intervenors do not deny, that this may be the first instance in which the FEC has failed to garner the required four votes to defend a dismissal order at the district-court level. CLC thus contends that this procedural posture so confounds the statutory scheme created by FECA, in which "responsibility for the civil enforcement of matters . . . covered by the Act [is] exclusively in the hands of the FEC in the first instance," id. at 13 (quoting Galliano v. USPS, 836 F.3d 1362, 1368 (D.C. Cir. 1988)), that allowing HFA and CTR to intervene would "commandeer [the FEC's] 'exclusive jurisdiction' over civil enforcement matters and override its decision not to defend here." Id. at 13–14. CLC argues that the dissenting Commissioner's SOR makes clear that "the FEC's absence is not the result of administrative accident or incapacity" but instead was a deliberate veto "grounded in deep-seated substantive disagreements among the Commissioners about the scope of the coordination rules and the agency's statutory obligation to enforce FECA." Id. at 8.

To start, the Court notes that the FEC's jurisdiction over complaints is only exclusive in the first instance. Its decision not to investigate the allegations in a complaint is always subject to judicial review. See *supra* Section I. In any case, even assuming that a 3-1 vote in favor of defending the suit can be considered a "decision not to defend," the binding law most relevant to

9

this case counsels against denying HFA and CFR the intervention otherwise guaranteed to them by the Federal Rules. In Center for Individual Freedom v. Van Hollen, 694 F.3d 108 (D.C. Cir. 2012), the D.C. Circuit considered an intervenor's standing to appeal a district court's invalidation of an FEC regulation where the FEC could not garner the votes to do so. Id. at 110. The court saw no problem with the intervenors replacing the FEC in the appellate litigation and cited the Supreme Court for the proposition that "an intervenor 'may step into the shoes of the original party [if] the intervenor independently fulfills the requirements of Article III.'" Id. (quoting Arizonans for Official English v. Arizona, 520 U.S. 43, 65 (1997)).

The Supreme Court, moreover, has approved this practice at the district-court level, albeit in a different context. In United States v. Windsor, 570 U.S. 744 (2013), the Court found that the district court had retained jurisdiction even though the Department of Justice had declined to defend the suit and members of Congress had intervened to do so. Id. at 755–56. The controversy remained live, said the Court, and the plaintiff's injury ongoing because the Government, despite agreeing with the plaintiff's position, still had not given her the relief she sought. Id. Such is the case here: although it has defaulted, the Commission did not vacate its dismissal and therefore did not afford CLC the relief it desired. And an entry of default does not equate with default judgment. See Fed. R. Civ. P. 55(a)–(b). Assuming, without deciding, CLC's standing to bring this case — which HFA and CTR dispute in their proposed Motion to Dismiss, see ECF No. 10-5 at 7 — its injury would remain "concrete, persisting, and unredressed" as long as the FEC dismissal order remains in place. And this "mean[s] that there [i]s a justiciable controversy between the parties." Windsor, 570 U.S. at 756.

While the aforementioned cases do not address the precise issue in this case — the effect of the FEC's default in an enforcement proceeding at the district-court level — they do counsel

that this default is not so unusual as to upend the usual principles of intervention, particularly as they have been articulated in the context of proceedings against the FEC.

## IV. Conclusion

For the foregoing reasons, the Court will grant the Motion to Intervene. A contemporaneous Order so stating will issue this day.

*/s/ James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date: November 15, 2019