UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **CAMPAIGN LEGAL CENTER,** *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>**FEDERAL ELECTION COMMISSION,**<br><br>Defendant,<br><br>and<br><br>**HILLARY FOR AMERICA,** *et al.*,<br><br>Defendant-Intervenors. | Civil Action No. 19-2336 (JEB) |

## MEMORANDUM OPINION

Plaintiffs Campaign Legal Center and one of its directors brought this action against the Federal Election Commission when it declined to investigate their allegations that Correct the Record (a super PAC) and Hillary for America (Hillary Clinton's 2016 presidential campaign) had unlawfully coordinated on millions of dollars of campaign expenditures. Their Amended Complaint states two counts. See ECF No. 15 (Am. Compl.), ¶¶ 105–13. The first, which arises under the Federal Election Campaign Act, seeks to reverse the Commission's decision not to open an investigation into CTR and HFA. Id., ¶¶ 105–07 (citing 52 U.S.C. § 30109(a)(8)(A)). The second, by contrast, relies on the Administrative Procedure Act and contends that FEC regulations governing coordinated spending, "as construed" by the Commission in its decision to dismiss their administrative complaint, "are inconsistent with the plain language of the FECA . . . as well as [other FEC] regulations." Id., ¶¶ 111–12. Put differently, Plaintiffs seek in Count II to challenge "the validity of the FEC's coordination regulations directly, to the extent they have

1

been authoritatively construed" to exempt certain conduct.  See ECF No. 50 (Pl. Supp. Mem.) at 1.  When the FEC could not summon the votes to defend this suit, the Court permitted CTR and HFA to intervene as Defendants.  See Campaign Legal Ctr. v. FEC, 334 F.R.D. 1, 3 (D.D.C. 2019).

Acknowledging that the jurisdictional issues presented here are hardly a stroll in the park, the Court recently dismissed Count I on the ground that Plaintiffs lack standing, given that they did not suffer a cognizable informational injury from the Commission's refusal to investigate or sanction CTR and HFA.  See Campaign Legal Ctr. v. FEC, 2020 WL 7059577, at *1 (D.D.C. Dec. 2, 2020).  Recognizing that Count II might rest on a different Article III injury — as it purports to look beyond that specific agency adjudication to seek review of FEC regulations instead — the Court invited supplemental briefing from the parties.  Id. at *9.  It also noted the existence of an "additional threshold question of whether Plaintiffs' APA claim is precluded by FECA."  Id.; see also Campaign Legal Ctr. v. FEC, 466 F. Supp. 3d 141, 161–62 (D.D.C. 2020) (flagging that question earlier in the litigation).  Having considered the additional briefing from the parties, the Court now concludes that Count II is indeed precluded, and it thus need not address standing.

I.   Analysis

There is no question that a court must address its subject-matter jurisdiction to hear a case before entertaining the merits.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88–89 (1998).  Yet, where a motion presents more than one jurisdictional issue, courts may pick and choose which to examine first.  Parker v. District of Columbia, 478 F.3d 370, 377–78 (D.C. Cir. 2007), aff'd sub nom. District of Columbia v. Heller, 554 U.S. 570 (2008).  This means that if the preclusion question is one of jurisdiction, the Court may consider it before examining standing.

See Block v. Community Nutrition Inst., 467 U.S. 340, 353 n.4 (1984) ("Since congressional preclusion of judicial review is in effect jurisdictional, [the Court] need not address" plaintiffs' "standing" if their claim is precluded). That is indeed the case here. The Court accordingly examines the preclusion question first, which it finds straightforward.

As several courts have held, including one in this district, Congress intended FECA's "delicately balanced scheme of procedures and remedies to be the exclusive means for vindicating the rights and declaring the duties stated in the Act." Citizens for Responsibility & Ethics in Washington v. FEC, 164 F. Supp. 3d 113, 120 (D.D.C. 2015) (cleaned up) (quoting Stockman v. FEC, 138 F.3d 144, 154 (5th Cir. 1998)). Parties seeking enforcement of the Act must therefore first bring a complaint before the agency, as Plaintiffs did, see 52 U.S.C. § 30106(b); Am. Compl., ¶ 3., and if they are unhappy with the FEC's resolution of that complaint, FECA's "private cause of action . . . is the exclusive means" to secure judicial review of that decision. Citizens for Responsibility, 164 F. Supp. 3d at 120; see also 52 U.S.C. § 30109(a)(8)(A) ("Any party aggrieved by an order of the Commission dismissing a complaint filed by such party . . . may file a petition with the United States District Court for the District of Columbia."). The upshot is that FECA's judicial-review provision divests courts of federal-question jurisdiction to "review FEC enforcement decisions" under any other statute, including the APA. Citizens for Responsibility, 164 F. Supp. 3d at 120; Stockman, 138 F.3d at 152–55; see also Telecommunications Research & Action Ctr. v. FCC, 750 F.2d 70, 77 (D.C. Cir. 1984) ("[A] statute which vests jurisdiction in a particular court cuts off original jurisdiction in other courts in all cases covered by that statute."); 5 U.S.C. § 701(a)(1) (APA does not apply "to the extent that statutes preclude judicial review").

By contrast, because "[t]he FECA has no provisions governing judicial review of regulations, . . . an action challenging its implementing regulations should be brought under the [APA]." Perot v. FEC, 97 F.3d 553, 560 (D.C. Cir. 1996); see also Citizens for Responsibility & Ethics in Washington v. FEC, 243 F. Supp. 3d 91, 104–05 (D.D.C. 2017) (applying this dichotomy to dismiss some APA claims while retaining another). For example, one can use the APA to bring a pre-enforcement challenge to a newly promulgated FEC rule. E.g., Shays v. FEC, 337 F. Supp. 2d 28, 37–38 (D.D.C. 2004), aff'd, 414 F.3d 76 (D.C. Cir. 2005).

Plaintiffs attempt, understandably, to fit themselves into the latter category. See Pl. Supp. Mem. at 28–29. They claim in Count II to be challenging "the relevant rules directly," id. at 29, although a cursory examination reveals that their real concern is with the FEC's "coordination regulations . . . as construed" by the Commission in its decision dismissing their administrative complaint. See Am. Compl., ¶¶ 111–13 (emphasis added); ECF No. 35 (Pl. SJ Mot.) at 43 (asking Court to "declare the [FEC's] regulatory construction invalid under the APA"); Pl. Supp. Mem. at 1 (characterizing challenge as attacking the "validity of the FEC's coordination regulations directly, to the extent they have been authoritatively construed" in the adjudication). Their briefing makes clear, moreover, that this argument is essentially conditional: the regulations they challenge contravene FECA "if" they mean what the Commissioners interpreted them to mean. See Pl. SJ Mot. at 41–42 (emphasis added). If not, then all is well.

If this sounds strange and unfamiliar, that is because it is: there is no such thing as an "as construed" challenge to a regulation. What Plaintiffs really have is a garden-variety claim that the FEC's "dismissal of [their] complaint . . . [was] contrary to law," 52 U.S.C. § 30109(a)(8)(C) — i.e., that the Commission made a legal error as part of its decision in a particular adjudication. See, e.g., Common Cause v. FEC, 108 F.3d 413, 415 (D.C. Cir. 1997) (FEC decision is contrary

4

to law if "based on an 'impermissible interpretation of the Act'" (citation omitted)); Level the Playing Field v. FEC, 232 F. Supp. 3d 130, 138 (D.D.C. 2017) (considering in "contrary to law" analysis whether "FEC adopted and applied a legal standard that is contrary to the text of the regulation").  If Plaintiffs' approach were permissible, then every legal (as distinct from factual) challenge to an agency adjudication could be repackaged as a challenge to a regulation or statute "as construed" by the agency in that instance.  That is not how agency review works, and it is unsurprising that Plaintiffs cite no authority for this sort of maneuver.

Indeed, the closest case on point involved a similar tactic and led to a similar result.  In Citizens for Responsibility, the plaintiff attempted to sidestep FECA's preclusion of review by claiming that it was challenging the Commission's adoption of a "de facto regulation" over the course of several adjudications, "as opposed to simply challenging particular dismissal decisions."  164 F. Supp. 3d at 118, 120.  The court rightly saw through that stratagem, responding that "the crux of [the] complaint is that the FEC dismissed [the plaintiff's] earlier administrative complaints under a faulty and misguided rationale."  Id. at 120.  "Like any party aggrieved by FEC enforcement decisions," it explained, the plaintiff could sue under FECA, but that was its "exclusive remedy for its disagreement with the FEC's rationale."  Id.  Same here.

At the end of the day, Plaintiffs' APA claim is nothing more than a challenge to the legal reasoning espoused by the Commission in a particular adjudication, and it is in no sense an attack on the "facial validity," Pl. Supp. Mem. at 5, of any regulation.  Because "Congress has implicitly precluded [such claims] by channeling" attacks on specific FEC enforcement decisions into FECA's specific judicial-review scheme, the Court lacks subject-matter jurisdiction over it.  Jarkesy v. SEC, 803 F.3d 9, 15 (D.C. Cir. 2015).  It must therefore dismiss that claim and thereby terminate this lawsuit.

\* \* \*

To cover all the bases, the Court notes one wrinkle: it is possible to read some decisions addressing FECA-APA preclusion as analyzing whether FECA is an "adequate remedy" under section 704 of the APA, see 5 U.S.C. § 704, rather than whether FECA "preclude[s] judicial review" under section 701. See, e.g., Citizens for Responsibility, 243 F. Supp. 3d 91, 103 (D.D.C. 2017). Where a plaintiff has a non-APA statutory remedy that is "adequate," the consequence is that an APA cause of action is unavailable, but it does not mean that the court lacks subject-matter jurisdiction. See Perry Capital LLC v. Mnuchin, 864 F.3d 591, 621 (D.C. Cir. 2017) (explaining that "the absence of [an alternative] remedy is . . . an element of the cause of action created by the APA"). As the availability of such a claim is thus a merits question, a court following this interpretation would need to address standing first. To be clear, the Court does not consider this to be the best understanding of FECA preclusion. In any event, it will briefly explain why analyzing FECA preclusion as a section 704 matter, rather than under section 701, would not change the result here.

Were that the required approach, the Court would have to address standing first. In doing so, it would find that at least one of the Plaintiffs (Catherine Hinckley Kelley, the CLC Director of Policy and State Programs and a registered voter) does have standing to pursue their APA claim. In that count, they challenge what they allege is a generally applicable, authoritative statement of agency policy (essentially a "de facto regulation") that, in their view, creates a large loophole in campaign-finance law. It is "eminently reasonable" to expect sophisticated actors to imminently abuse that loophole. See New York Republican State Comm. v. SEC, 927 F.3d 499, 505 (D.C. Cir. 2019). And Plaintiff Kelley would be cognizably injured as a voter if, as is quite likely, at least one of those entities does not already disclose their expenditures. Such an entity

6

(unlike CTR, which must already report its expenditures as a super PAC) could avoid disclosing any information about spending that FECA deems coordinated and thus subject to disclosure. See Nader v. FEC, 725 F.3d 226, 230 (D.C. Cir. 2013) ("[L]itigants who claim a right to information allege the type of concrete injury needed for standing to bring a FECA claim if the disclosure they seek is related to their informed participation in the political process."). That result is consistent with the Court's previous Opinion, which held that Plaintiffs here lack standing to find out whether CTR's spending was coordinated because they already know about that spending, but further suggested that voters would be cognizably injured by failing to learn of "coordinated spending by an entity that does not already disclose its expenditures under separate FECA provisions." Campaign Legal Ctr., 2020 WL 7059577, at *9.

That hurdle cleared, though, Plaintiffs immediately trip over preclusion for the reasons given above. Regardless of whether FECA's specific scheme for reviewing FEC enforcement decisions is deemed their exclusive remedy (divesting federal-question jurisdiction over Plaintiffs' APA claim) or rather an alternative "adequate remedy" under 5 U.S.C. § 704 (withdrawing Plaintiffs' APA cause of action), the result is still the same: the APA claim is not viable. The only technical difference is that the Court would grant Defendants summary judgment on that claim, rather than dismissing it for lack of subject-matter jurisdiction, as it now does.

## II.  Conclusion

For the foregoing reasons, the Court will dismiss Count II of Plaintiffs' Amended Complaint for lack of subject-matter jurisdiction.  As Count I was previously dismissed, that terminates the case.  A separate Order so stating shall issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
United States District Judge

Date:  February 12, 2021